Good morning. May it please the court. My name is Tim Everett. I'm before the court today to represent Mr. Rinoa Matul on his petition to review before the court. Mr. Rinoa Matul respectfully requests of this court that they find that the BIA abused its discretion in non-administrative closing his case. During the four year period when this case was on appeal from the IJ to the BIA, you didn't ask for repapering. That's correct. And you're the attorney. That's correct. Was that an oversight? Oversight. Or perhaps we knew two, a couple, three things. One, that the INS attorneys would ask for administrative closure. The private bar could ask for administrative closure. And that the board would correspond to administrative closing its cases. We did ask for, I did ask in other cases to have those cases administratively closed. I can't hear you. I'm sorry. I did ask in other cases to have those cases administratively closed. The intention was to ask in this case. However, the board got to it before I did. And they rejected the appeal and denied the case. I don't know where to take it from there. I wish I had taken it, filed the motion before that. However, I'm not sure if we did get other cases where the BIA was corresponding to administrative closed cases. So I guess in some sense we relied on that. And we thought that if we didn't get to it and the board did before we did, the board would correspond to it. Because I did never, nor do I recall seeing, bringing to my attention in other cases, the denial of a case that qualified for the administrative closure under the memos that were set forth. Well, you've put your client in a very bad position. I understand, Your Honor. You haven't suggested incompetence of counsel as a ground. Well, I obviously, if the court's suggesting that we should, if this is denied and nothing else is available to my client, I would provide him that. Well, I've looked very carefully at the case and I find it difficult to find a basis for reversal. Well, Your Honor, may I, may I posit that the board's policy seemed to be to administratively close these cases. And we did not intentionally overlook this case. We sought to follow the motion. My understanding of the memos is that those memos set very straightforward that the board may have to respond to administratively close. However, where the court's judgment is, I'll stand by that and advise my counsel accordingly. But I do think that there, I do think it sets forth sort of the situation where whoever, if the board is going to close in some cases but not close in other cases, then what standard is there for the board to, for private counsel to know what's going to happen? I had no reason to believe that the board would deny the appeal without administrative closing. Is there any possibility that the government attorney would cooperate with you to see if there could be some relief from the board? I assume there's a possibility, Your Honor. I haven't addressed that to them. It does seem like an injustice here, but, you know, it may be one that we just can't cure. Well, I guess my argument and response is that this policy was an internal policy. The court has found administrative bodies to be bound by internal policy and practice in the past. We think that was similar in this matter. The board in the case of Alcatraz v. INS addressed a similar situation, said that it might be on occasion that internal memorandum might create a binding on the agency, a binding rule on the agency. Is there a, is that just a practice or is there an interim rule that you can find? There were several memos issued. Those are cited in the Alcatraz v. INS case. Those memos were issued by the Immigration Service and by the Executive Office of Immigration Review. Are those in the file? Are those in the record? We referenced them in our opening brief, Your Honor. We feel like they, those were made public. What do you think those memos do for you? Well, I think what they did for me, and especially in light of Judge Fletcher's comments, is for us it created a reliance that, not that we weren't concerned about the matter, but we truly, I truly felt if we did not address this in a motion, the board was going to spontaneously close. I'm wondering if I'm not following what's going on here. I guess you want to have repapering. We want to have repapering. The problem is that you can't get repapering after there's been a final deportation order. Exactly. Okay, so what do these memos do to get around that? Well, I think the memos created a binding rule on the board to send this, to administratively close this case and send it back so it could be considered for repapering. But if you can't get repapering after there's a final deportation order, you're cooked, aren't you? Well, that sort of creates a Catch-22 because if you... No, you have to ask for repapering before the final deportation order. There's no Catch-22. You just have to, you can't get repapering after there's been a final deportation order. But if we step, if I take it back one step to the administrative closure part of that, if they create a memo and they create a policy where they administratively close cases... Before there's a final deportation order. They administratively close 90 percent of them, but 10 percent, same type of case, but they do not administratively close those cases. Then they enter a final order. Then those people can't repaper. Well, take it back to the first step. If that first step is arbitrary, depends on whim and willy-nilly which cases are administratively closed or not, then that's an abuse of discretion. You can't have that ladder bar operate to control or to rule over that former injustice, that we find is abuse of discretion. Do you want to reserve any time for rebuttal? Yes, I do. Okay, thank you very much. Good morning. Good morning, and may it please the Court. My name is Jonathan Mitchell. I represent the Attorney General. The Board of Immigration Appeals did not abuse its discretion in denying the petitioner's motion to reconsider the Board's denial of his earlier motion to reopen. Is the opposing counsel correct that the service of its own motion does repaper? The service of its own motion? Mm-hmm. No, I don't believe so. The Attorney General decides whether to repaper a case. That's what Section 309C3 has to say. Well, does the Attorney General repaper in most of these cases? There is a proposed rule that has not yet been finalized that would validate that. I understand that, but what's the practice? The practice, according to the proposed rule, is that typically a case will be repapered if a petitioner is otherwise eligible for relief in the form of cancellation of removal under the standards of the new statute. So the petitioner would have to show not only a continuous 10-year period of residence, ending at the time of the new statute. No, not under the repapering. They don't have to show 10 years. The reason they repaper is because they don't meet that 10-year period. Well, they repaper because they don't meet the earlier 7-year period under the old statute. Right. Repapering gives an alien the opportunity to apply for relief from deportation under more favorable standards. Right. The alien has to meet those standards before the Attorney General will exercise his discretion to repaper a case. This individual had 8 years minus 1 day, I think, of residence. Under the old 7-year standard, he met that, isn't that right? I don't believe that's correct, Your Honor. He was served with an order to show cause on October 3rd of 1996. He came to this country on October 19th of 1990. So he is short of even the 7-year time period. He has less than 6 years under the stop-time rule. If the Attorney General were to repaper his case, the stop-time rule would not apply on the October 3rd date. That's correct. Right. However, the proposed rule from the Attorney General does say that a proceeding will not be reopened solely for the purpose of repapering. That is in the background description of the proposed rule. And the statute on top of that gives the Attorney General the complete discretion to decide whether to repaper a case. So there was no error of fact or law in the Board's denial of his earlier motion to reopen. And because he could not identify an error of fact or law in the motion to reconsider, and that is the motion that is on appeal before this Court today, there is no basis to find an abuse of discretion in denying the Board's decision to deny the motion to reconsider. Excuse me. Do I get implicitly that if he had made the motion before closure, he wouldn't have got repapering anyway? That may be true, Your Honor. It would depend on – Go ahead. I'm sorry. It would depend on whether the Board or the Attorney General were to find that the petitioner could qualify for cancellation of removal under the new statutory standards. He would have to show extreme hardship. He would have to show good moral character. He would also have to show a continuous period of residence of 10 years. But if he had made the motion earlier, would seven years suffice? I believe under the new statute he needs to show 10 years to qualify for cancellation of removal. Well, what about before the statute in the practice? The claim is that the practice was to allow repapering and a motion under these circumstances. Under circumstances in which he would qualify for cancellation of removal. That would be a decision to be made by the Board in the first instance. And the Board did not make that decision because no motion was ever made before the Board. I'm not understanding your statement that it requires 10 years. The purpose for the repapering was to let them meet the other standard, which was seven years. And if they had the 10 years, they wouldn't need to repaper. Well, they might still need to repaper if the stop time rule under the old statute ended the clock before the 10-year period. Under the statutory standard, which is Section 309C3 of the Illegal Immigrant Reform and Immigrant Responsibility Act, as amended by the Nicaragua Adjustment Act of 1997, it provides that the stop time rule does not apply simply by the issuance of an order to show cause. So when the petitioner received that order to show cause on October 3rd of 1996, if he were in a repapered proceeding, that order to show cause would not serve the function of stopping the clock. But I guess I'm a little surprised. You may be right, but I had thought you had to meet the seven-year period, not the 10. Well, you have to meet the requirements for cancellation of removal for the Attorney General to exercise his discretion to repaper. Let me make sure I think I have the same question Judge Fletcher does. You have to meet the longer time period, but you're not hampered by the stop time rule. You're not hampered by the stop time rule as it applies to an order to show cause. There may be a crime that you commit that would invoke a stop time rule, but the service of the order to show cause will not stop the clock. That's correct. The Board's decision not to reopen the proceedings, therefore, cannot be deemed an error of fact or law. And that is really the only issue before this Court because he did not appeal the earlier denial of the motion to reopen, nor did he appeal the earlier VIA decision affirming the IHA's decision on the merits. So that being the case, this was not an abuse of discretion. And if the Court has no further questions, we're content to rest on our brief. I guess not. Thank you, Mr. Mitchell. Thank you. Mr. Edward, back to you. Your Honor, if I may just briefly, the repapering issue is subsequent to the administrative closure. Say that again. Speak up. The administrative closure would be what would come first, and then once the case is administratively closed, it would permit the Immigration Service the opportunity to terminate those proceedings, which are deportation proceedings, and institute removal proceedings under which the new cancellation for non-lawful permanent residence. That's the section in removal proceedings. So the whole purpose by the administrative closure plus repapering was to provide some measure of justice, I guess, to those cases that were pending when the new Immigration Reform Act came out in 1996. And those individuals who were in court, as was my client, and whose case for suspension of deportation was thereby null and void because he was no longer eligible to proceed on that application. Do you have a comment on this seven years versus ten years? Do you agree with the government that it takes ten years? It does take ten years under the new statute. I know under the new statute, but for those who are repapering, are they required to meet the ten years? They will be required because what the government will do when it repapers is terminate the old proceedings, which are deportation proceedings, and institute new proceedings, which are removal proceedings, and thereby the alien will be under the new proceedings and have to show ten years' presence. And would your client show that? He would be able to show that. And that, in fact, is the part of our argument as to why the board should have administratively closed this case, is that he was clearly entitled to relief by way of cancellation for non-lawful permanent residence. He has a USC child, a child born in the United States. He has ten years of physical presence, no criminal activity. He would have been eligible, and, therefore, under this rule that the board set out, which is a ministerial rule, not a rule involving discretion, he clearly would have been eligible for administrative closure and later at another time if the service is so decided in repapering. But we're not addressing it. Yes, sir. Was the ten years obtained prior to the present proceedings? He did not have ten years when he was before the immigration judge. But the repapering, the proposed regs for repapering do not limit that person. I understand that, but I'm just wondering if you're trying to take advantage of these proceedings, keeping them in the country to accrue the ten years. Yes. Yes, he would be prima facie eligible for the relief, of course. And the proposed regs set out that the discretionary determinations are to be left to a later point in time. One more question. He at some point was granted voluntary departure. Has that been renewed, or can he go to the director and get that renewed? I don't know. Since that voluntary departure was issued under deportation proceedings of the prior statute, I'm not sure. Perhaps we could get that renewed. And obviously we can seek that and seek to reach some kind of a settlement with the government if they're willing. Thank you. Thank you. Have a good day. Case report, you just submitted.
judges: Bright , B. Fletcher, Silverman